IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JASEN BRUZEK, HOPE KOPLIN, NEIL MILLER, and
CHRISTOPHER PETERSON, *individually and on behalf
of all other similarly situated*,

                          Plaintiffs,

    v.

HUSKY ENERGY, INC., and
SUPERIOR REFINING COMPANY LLC,

                          Defendants.

OPINION AND ORDER

18-cv-697-wmc

Plaintiffs brought claims against defendants Husky Energy, Inc., and Superior Refining Company, LLC, the owner and operator respectively of the Husky Superior Refinery, following a series of explosions and an asphalt fire within the Refinery, which forced plaintiffs to evacuate their properties. Defendant Husky Energy Incorporated ("HEI") filed a motion to dismiss for lack of personal jurisdiction. (Dkt. #43.) Additionally, HEI and Superior Refining Company ("SRC") jointly filed motions to dismiss for failure to state a claim and to strike. (Dkt. ##41, 47.) For the reasons stated below, these motions will all be denied.

BACKGROUND[1]

On April 26, 2018, a series of explosions and an asphalt fire occurred within the

---

[1] In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the court will rely on the allegations in the complaint and affidavits submitted by the parties. *See Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). As for resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true and draws all inferences in plaintiffs' favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

Husky Superior Refinery in Superior, Wisconsin. (Am. Compl. (dkt. #29) ¶ 23.) The fire spread into the vicinity of a tank containing hydrogen fluoride, a hazardous chemical capable of causing severe burns and death. (*Id.* ¶¶ 20, 29, 33.) The fire threatened to rupture the tank, which would result in the release of a large, toxic plume. (*Id.* ¶ 33.) Because of this threat, Superior's mayor issued a mandatory evacuation order to all properties within a three-mile radius of the Refinery, as well as all properties ten miles south of the Refinery. (*Id.* ¶ 32.) Plaintiffs were among those who were forced to evacuate. (*Id.* ¶¶ 6-9.)

Plaintiffs allege that defendants used a worn valve in the Refinery, which inadvertently allowed oxygen to combine with hydrocarbon, creating a flammable mixture. (*Id.* ¶¶ 39, 44, 48.) That mixture flowed through the Refinery until it ignited, resulting in the initial explosion. (*Id.* ¶ 49.) Later that day, the Chemical Safety and Hazard Investigation Board (the "CSB"), a federal agency that investigates accidental releases of chemicals, began investigating the explosion. (*Id.* ¶ 38.) The CSB compiled information and issued a report about the explosion on August 2, 2018. (*Id*. ¶ 39.)


OPINION

As noted above, pending before the court are three motions filed by defendants: two motions to dismiss, one for lack of personal jurisdiction and the other for failure to state a claim, and one motion to strike. The court will address each in turn, beginning with a claimed lack of personal jurisdiction.

## I. Motion to Dismiss for Lack of Personal Jurisdiction (dkt. #43)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden to show a *prima facie* case of personal jurisdiction. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The court must accept as true well-pleaded facts alleged, resolving factual disputes in favor of the plaintiff. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). A federal court may exercise personal jurisdiction if the defendant is amenable to suit under the state law of the state where the federal court sits and where jurisdiction is consistent with constitutional due process under the "minimum contacts" test. *KM Enters., Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). Under this liberal standard, plaintiffs have amply met their burden.

### A. Wisconsin Long-Arm Statute

Pursuant to the state's long-arm statute, Wisconsin may exercise personal jurisdiction over a defendant "[i]n any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant." Wis. Stat. § 801.05(3). Taking the complaint as true and drawing all inferences in plaintiffs' favor, HEI's use of a deficient valve, as owner of the Refinery, would certainly appear to qualify as an act committed within the state of Wisconsin. Alternatively, HEI's failure to maintain that valve could constitute an omission by the defendant within the state of Wisconsin.

While the long-arm statute must be interpreted consistently with the requirements of constitutional due process, *Felland*, 682 F.3d at 678, a defendant is presumed to fall

within Wisconsin's long-arm statute if jurisdiction over a defendant comports with constitutional due process under the minimum contacts analysis. *See id*. ("Once the requirements of due process are satisfied, then there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute itself because the statute has been interpreted to go to the lengths of due process."). Thus, the language of the long-arm statute will be interpreted consistently with the boundaries of due process, and the court will focus on those constitutional requirements.

## B. Constitutional Due Process

The Fourteenth Amendment's Due Process clause recognizes two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014). General jurisdiction applies where a corporation has its principal place of business or is incorporated in the forum state. *Id.* at 137. Alternatively, general jurisdiction can apply where a corporation's contacts with the state are so continuous and systematic as to render it "at home" in the forum state. *Id.* at 122. Here, general jurisdiction does not exist over HEI, since it is incorporated and headquartered outside of Wisconsin, and HEI's activities in Superior, Wisconsin, do not rise to the level of rendering it "at home" in the state.

On the other hand, specific jurisdiction may be established where a defendant's contacts with a forum state fall short of continuous or systematic but are still adequately "relate[d] to the challenged conduct or transaction." *Tamburo v. Dworkin,* 601 F.3d 693, 702 (7th Cir. 2010). This type of jurisdiction is generally established where a defendant's conduct in the forum gives rise to a reasonable anticipation of being summoned into court in that forum. *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002). The Seventh

Circuit has explained that specific jurisdiction exists when there are sufficient relevant contacts with the forum state and where: (1) the defendant purposefully avails itself of the privilege of doing business in the forum state; (2) the injury arises out of the defendant's forum-related activities; and (3) exercising jurisdiction does not offend traditional notions of fair play and substantial justice. *Felland*, 682 F.3d at 673.

### 1. Relevant HEI-Wisconsin Contacts

A specific jurisdiction analysis may only consider those contacts out of which the claim arises or relates. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 429 (7th Cir. 2010); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (holding a court cannot aggregate defendant's contacts with a state to create constitutionally required minimum contacts). Consequently, identifying relevant forum-related contacts also establishes that the claims arose from activities related to those contacts. *See uBID*, 623 F.3d at 429. The nexus between the forum contacts and a cause of action ensures defendants have control over the jurisdictional consequences of their actions. *Hy Cite Corp. v. Badbusinessbureau.com, LLC*, 297 F. Supp. 2d 1154, 1164 (W.D. Wis. 2004). Still, the court may consider not only those contacts between a defendant and the forum state, but also those contacts between a defendant and a plaintiff in the forum state. *Tamburo*, 601 F.2d at 705.

As noted above, HEI is the owner of the Refinery, which is located in Wisconsin. (Am. Compl. (dkt. #29) ¶ 16.) The decision to own capital in Wisconsin -- especially capital that allegedly contains toxic and combustible substances -- would appear sufficient by itself to put HEI on notice of being hauled into a Wisconsin court to explain its conduct

with respect to that capital. Regardless, here, plaintiffs' claims negligence, nuisance, trespass, extrahazardous activity, and punitive damages, all arising out of HEI's ongoing ownership and operation of the Refinery giving rise to the explosions and fire that forced plaintiffs' evacuation. (*See id.* ¶¶ 31-33.) HEI also participated in a reimbursement program within Wisconsin following the events of April 26, 2018. (*Id.* ¶ 11.) While plaintiffs' claims do not arise from the reimbursement program, they certainly are *related to* it, as the program was intended to compensate for such claims. (*See id.* ¶¶ 77-83.) Accordingly, HEI's Wisconsin contacts are relevant to plaintiffs' claims and put HEI on notice of the possibility of being hauled into a Wisconsin court.

### 2. Purposeful Availment

The purposeful availment requirement examines whether a defendant's forum contacts convey the economic benefits and protections of a forum state's laws, establishing quid pro quo the burdens of litigating a claim in that forum. *Tamburo*, 601 F.3d at 702. Put another way a "substantial connection" between defendant and the forum state exists if the defendant "purposefully avails itself of the privilege of conducting activities" in the forum. *See Hy Cite Corp.*, 297 F. Supp. 2d at 1163.

Here, HEI is alleged to have received the economic benefit of owning and operating the Refinery within the state of Wisconsin in exchange for the burden of being subject to litigation in the state's courts. Again, defendant is the owner of the Refinery, for which it allegedly paid $435 million. (Am. Compl. (dkt. #29) ¶¶ 11.) HEI's valuation of the Refinery suggests its purchase was the acquisition of a significant asset, permitting HEI to do business in this state. That purchase and the operation of the business, in turn, subjects

HEI to the jurisdiction of Wisconsin courts. Thus, defendant has purposefully availed itself.

### 3. Fair Play and Substantial Justice

Finally, the defendant must present a "compelling case" that personal jurisdiction would offend traditional notions of fair play and substantial justice. *Felland*, 682 F.3d at 677. Relevant to this inquiry, are factors including: "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)) (internal quotation marks omitted).

Certainly, the burden on defendant to litigate in Wisconsin is a primary concern to consider. *See Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1204 (7th Cir. 1985) (citing *World-Wide Volkswagen Corp. v. Woodso*n, 444 U.S. 286, 292 (1980)). However, this factor involves an inquiry as to whether the defendant's burden would be greater than that routinely tolerated by nonresidents subject to specific jurisdiction. *Felland*, 682 F.3d at 677. While nonresident defendants always face some burden litigating out of state, routine hardships tolerated by nonresident defendants do not establish that jurisdiction is inappropriate. *Id.* HEI's sole complaint about litigating in Wisconsin is that it is a Canadian company. (12(b)(2) Mot. Reply Br. (dkt. #56) 7.) Defendant declines to explain what makes litigating here "extremely burdensome" for a Canadian company. (*Id.*) In fact, defendant has already secured local counsel. Moreover, the potential burden of

defendant's employees traveling to Wisconsin is a hardship routinely tolerated by nonresident defendants. The distance between Alberta, Canada, and the Western District of Wisconsin is also not so great as to render this routine hardship into an unduly burdensome one. Consequently, HEI has not established that it would be unduly burdened to litigate in Wisconsin, particularly since all of the most material events and presumably most of the material witnesses reside (or at least did reside) here.

Defendant also asserts that it would be against public policy to "unreasonably" require an international company to litigate in a foreign court that lacks jurisdiction. (*Id.* (quoting *Koster v. Automark Indus., Inc.*, 640 F.2d 77, 80 (7th Cir. 1981)).) HEI should be right, except that is not the situation here. It is not unreasonable to haul a refinery's owner into court after its alleged negligence forced the evacuation of thousands of its neighbors in Wisconsin.

Further, the state of Wisconsin has an obvious (if not an overwhelming) interest in adjudicating a dispute when its resident seeks redress for tortious injury in Wisconsin inflicted by out-of-state actors. *See Felland*, 682 F.3d at 677; *Tamburo*, 601 F.3d at 709. Additionally, while HEI notes that plaintiffs did not allege that they could not recover from Superior Refining's compensation program (12(b)(2) Mot. Reply Br. (dkt. #56) 7), this assertion does not undermine basic notions of the fair play and substantial justice factors specifically, nor does HEI attempt to argue otherwise. Regardless, this consideration is also insufficient to outweigh Wisconsin's interest in jurisdiction because HEI has not conclusively demonstrated that the reimbursement program would be a more effective form of relief than litigation. Defendant's burden in litigating here, the existence of the

reimbursement program, and any theoretical public policy simply do not outweigh Wisconsin's substantial interest in adjudicating this dispute. Thus, this court has jurisdiction over HEI and its motion is denied.

## II. Motion to Dismiss for Failure to State a Claim (dkt. #41)

A motion to dismiss for failure to state a claim is designed to test the complaint's legal sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The court must "constru[e] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). Dismissal is warranted only if no recourse could be granted under any set of facts consistent with the allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). To survive a motion to dismiss, a plaintiff must allege sufficient facts to state a plausible claim for relief. *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Twombly*, 550 U.S. at 570).

Defendants present several arguments seeking to dismiss plaintiffs' claims of negligence, nuisance, trespass, strict liability for an extrahazardous activity, and punitive damages. For the reasons set forth below, defendants' motion must be denied.

### A. Negligence

To make a *prima facie* case of negligence under Wisconsin law, a plaintiff must demonstrate: (1) a duty of care; (2) a breach of that duty; (3) injury; and (4) a causal connection between the breach and the injury. *See Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (citing *Nieuwendorp v. Am. Family Ins. Co.*, 191 Wis.2d 462,

475, 529 N.W.2d 594 (1995)).  Defendants contend that plaintiffs have not pleaded facts capable of establishing breach or causation.  (12(b)(6) Mot. Br. (dkt. #42) 6.)

Looking first at breach, defendants owed plaintiffs a duty of ordinary care to act as a reasonable person would in similar circumstances.  *See Gritzner v. Michael R.*, 2000 WI 68, ¶ 22, 235 Wis. 781, 611 N.W.2d 906 ("A person is negligent when [he or she] fails to exercise ordinary care.  Ordinary care is the care which a reasonable person would use in similar circumstances.").  Plaintiffs have pleaded that the Refinery used a worn valve that defectively created a flammable mixture.  (Am. Compl. (dkt. #29) ¶¶ 44-48.)  A reasonable trier of fact *may* infer that the use of that valve, given its alleged worn nature and the consequence of not insuring adequate maintenance, falls outside what a reasonable person would have allowed while owning or operating the Refinery.  At least taken as true, plaintiffs' allegations, therefore, constitute a plausible breach of duty claim against defendants on the face of the complaint.

Causation, likewise, has been properly pleaded.  Plaintiffs have alleged that the flammable mixture created by the defective valve's use flowed through the Refinery until it found an ignition source.  (*Id.* ¶ 49.)  Accordingly, plaintiffs identified defendants' use of the valve as a substantial factor in causing their injuries.  (Am. Compl. (dkt. #29) ¶¶ 44-48.)  *See Ehlinger by Ehlinger v. Sipes*, 155 Wis. 2d 1, 12, 454 N.W.2d 754 (1990) ("To establish causation in Wisconsin, the plaintiff bears the burden of proving that the defendant's negligence was a substantial factor in causing the plaintiff's harm.").  Thus, plaintiffs have sufficiently pleaded both breach of duty and causation.  As a result, plaintiffs have stated a claim of negligence with the understanding that defendants will be given

every opportunity to hold plaintiffs to their proof and offer any defense they may have.

## B. Nuisance

Wisconsin has adopted the Restatement (Second) of Torts' analysis for claims of private nuisance. *Prah v. Maretti*, 108 Wis. 2d 223, 231-32, 321 N.W.2d 182 (1982). The Restatement provides that:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
> (a) intentional and unreasonable, or
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent . . . conduct . . . .

Restatement (Second) of Torts § 822 (Am. Law Inst. 1977). Thus, after a nuisance has been established, the court must determine whether the necessary underlying tortious conduct has occurred before imposing liability. *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶ 32, 277 Wis. 2d 635, 691 N.W.2d 658. Liability may be imposed when the conduct underlying a nuisance is negligent. *Id.*

As for the first step of the analysis, the complaint has pleaded an invasion of plaintiffs' interest in the private use and enjoyment of their land. Specifically, plaintiffs allege that defendants "caused an array of toxic substances, noise, soot, ash, or dust to enter [their] property" (Am. Compl. (dkt. #29) ¶ 95), and "polycyclic aromatic hydrocarbons fell out of the plume and contaminated soils for miles southeast of the refinery" (*id.* ¶ 74). Plaintiffs add that "[their] interests in the use and enjoyment of their property was diminished by Defendants' acts or omissions, which caused, among other things: the evacuation of Plaintiffs and all others from the Evacuation Zone, and the

release of hazardous and other substances into the air and onto Plaintiffs' property." (*Id.* ¶ 110).  Importantly, a nuisance is an invasion of one's *interest* in the private use and enjoyment of land.  Restatement (Second) of Torts § 821D, cmt. *b*.  Being forced to evacuate certainly interferes with that interest, just as falling chemical debris does.  Consequently, plaintiffs have adequately alleged nuisance.

As the court has already concluded that plaintiffs may proceed on their claim of negligence, they have also established the necessary underlying conduct and the second element of a private nuisance claim.  For these reasons, defendants' motion to dismiss plaintiffs' nuisance claim is also denied.


**C. Trespass**

In Wisconsin, liability for trespass attaches if one intentionally goes on the land possessed by another or causes a thing or third person to do so, even if that invasion does not injure a legally protected interest.  *See Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, ¶ 40, 328 Wis. 2d 436, 787 N.W.2d 6 (quoting Restatement § 158, at 277).  In addition to intentional trespasses, Wisconsin also imposes liability for trespasses resulting from negligence or extrahazardous activities.[2]  *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 677, 476 N.W.2d 593 (Wi. App. 1991) (citing Restatement § 165).  As such, the entry of chemicals into the soil of private property may constitute a trespass.  *See id.*

---

[2] Section 165 of the Restatement uses the term "abnormally dangerous" in place of "extrahazardous activity."  However, in Wisconsin, the two terms are interchangeable.  *See Wagner v. Cont'l Cas. Co.*, 143 Wis. 2d 379, 392, 421 N.W.2d 835 (1988); *see also Estate of Thompson v. Jump River Elec. Coop.*, 225 Wis. 2d 588, 595 n.5, 593 N.W.2d 901 (Ct. App. 1999) ("The terms 'extrahazardous' and 'abnormally dangerous' are used synonymously in Wisconsin").

As noted above, plaintiffs have alleged that defendants "caused an array of toxic substances, noise, soot, ash, or dust to enter [their] property" (Am. Compl. (dkt. #29) ¶ 116), as well as that "polycyclic aromatic hydrocarbons fell out of the plume [from the fire/explosion] and contaminated soils for miles southeast of the refinery" (*id.* ¶ 74). These allegations, taken in conjunction with the allegation that defendants' actions caused the events in question, create a reasonable inference that defendants caused the entry. Accordingly, plaintiffs have adequately pleaded that the trespass was the result of defendants' negligent conduct, so defendants' motion to dismiss the trespass claim is denied.

### D. Punitive Damages

Defendants argue that plaintiffs have not plausibly pleaded allegations sufficient to support a "claim" for punitive damages.[3] (12(b)(6) Mot. Br. (dkt. #42) 14-15.) Plaintiffs may receive punitive damages if the evidence shows that defendants acted maliciously towards them or in an intentional disregard of their rights. Wis. Stat. § 895.043(3). In other words, punitive damages may be awarded if a jury determines that defendants' conduct was "either malicious[] or in wanton, willful, or reckless disregard of plaintiff[s']

---

[3] Notably, in Wisconsin, punitive damages are a remedy, not a freestanding cause of action. *Becker v. Automatic Garage Door Co.*, 156 Wis. 2d 409, 415, 456 N.W.2d 888, 890 (Ct. App. 1990) ("A claim for punitive damages is in the nature of a remedy and should not be confused with the concept of a cause of action") (citing *Brown v. Maxey*, 124 Wis. 2d 426, 431, 369 N.W.2d 677, 680 (1985)). Pleading punitive damages as a cause of action may result in dismissal of that claim, but that does not prevent a plaintiff from seeking punitive damages. *See Karnes v. C.R. Bards, Inc.*, No. 18-cv-931-wmc, 2019 WL 1639807, at *9 (W.D. Wis. April 16, 2019) (dismissing claim for punitive damages, but permitting plaintiff to pursue them should there be supporting evidence at trial). Defendant, however, does not raise this argument.

rights." Wis. JI-CIVIL 1707. A defendant's conduct "is wanton, willful, or in reckless disregard for plaintiff's rights when it demonstrates an indifference on his or her part to the consequences of his or her actions." *Id.*

Plaintiffs allege that defendants were "aware of . . . conditions at the Husky Superior Refinery which created a high probability of injury to the rights and safety of Plaintiffs . . ." and that defendants "intentionally proceeded to act in conscious and intentional disregard of that high probability of injury." (Am. Compl. (dkt. # 29) ¶ 129.) Taken with allegations of a worn valve and the presence of a dangerous chemical compound, it is conceivable or at least not unreasonable on its face, to suppose that a jury might award plaintiffs punitive damages, although admittedly this is a much closer question on the limited facts before the court at the pleadings stage. Regardless, the question of punitive damages will be much better addressed upon a developed evidentiary record, and the court will not preclude plaintiffs from developing that record at its outset. Accordingly, defendants' motion will be denied.

## III. Motion to Strike (dkt. #47)

Defendants present two bases upon which they believe the court should strike portions of plaintiffs' complaint. Defendants first argues that plaintiff's class allegations should be struck under Rule 23. Defendants then argue that all allegations related to the Chemical Safety and Hazardous Investigation Board ("CSB") report should be struck under Rule 12(f) and 42 U.S.C. § 7412(r)(6)(G). Neither argument is persuasive.

## A. Class Allegations

While typically the question of the adequacy of class action allegations are taken up after plaintiffs move for class certification, either party may ask for a determination of class certification. *See Blihovde v. St. Croix County*, 219 F.R.D. 607, 612 (W.D. Wis. 2003). Class certification is also be determined at the "earliest practicable time," Fed. R. Civ. P. 23(c)(1)(A); albeit ordinarily following discovery. *Guzman v. N. Ill. Gas Co.*, No. 09 C 1358, 2009 WL 3762202, at *2 (N.D. Ill. Nov. 6, 2009). Indeed, to properly decide class certification, "discovery is often appropriate, even necessary." *Id.*

Regardless, absent a developed record, a motion to strike class allegations must be evaluated under a standard similar to that of a Rule 12(b)(6) motion. *Murdock-Alexander v. Tempsnow Emp't*, No. 16-cv-5182, 2016 WL 6833961, at *2 (N.D. Ill. Nov. 21, 2016); *Ladik v. Wal-Mart*, 291 F.R.D. 263, 269 (W.D. Wis. 2013); *Sjoblom v. Charter Commc'ns, LLC*, No. 3:07-cv-0451-bbc, 2007 WL 4560541, at *6 (W.D. Wis. Dec. 19, 2007) ("Because defendants challenge class certification solely on the basis of the allegations in the complaint, the proper standard is the same as that applied in deciding a motion to dismiss for failure to state a claim."). Under this standard, plaintiffs' allegations must "state a claim to relief that is plausible on its face" and "raise a right to relief beyond the speculative level." *Iqbal*, 556 U.S. at 678; *Ladik*, 291 F.R.D. at 269. Thus, "the question is whether plaintiffs' allegations are sufficient to show that it is plausible that plaintiffs will be able to satisfy the Rule 23 requirements after conducting discovery." *Ladik*, 291 F.R.D. at 269. Still, this standard applies to Rule 23 differently from Rule 12(b)(6) in at least one important respect: the court is not *required* to take the alleged facts as true when

determining whether to strike class allegations. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) ("A motion under Rule 12(b)(6) is unique in requiring the district judge to accept the plaintiff's allegations; we see no reason to extend that approach to Rule 23 . . . .").

To warrant class certification, plaintiffs must ultimately satisfy the four prerequisites of Rule 23(a), as well as one of the three subdivisions of Rule 23(b). *See Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). At this early stage, however, plaintiffs need only have pleaded facts that, if accepted as true, would satisfy the requirements of Rule 23. *See Ladik*, 291 F.R.D. at 269. Indeed, it is a "rare case in which it is clear from the pleading that plaintiffs may not proceed as a class." *Ladik*, 291 F.R.D. at 272.

In the present case, defendants argue that plaintiffs have not and cannot satisfy Rule 23(a)(4) or Rule 23(b)(3) because plaintiffs are eligible for an existing reimbursement program.[4] Regarding Rule 23(a)(4), defendants cite *In re Aqua Dots Product Liability Litigation*, 654 F.3d 748 (7th Cir. 2011). *Aqua Dots* stands for the proposition that denying class certification when compensatory measures are readily available without the costs of trial is within the authority of a district judge under Rule 23(a)(4). 654 F.3d at 752. However, it does not *require* the court to make such a determination without a developed factual record. While it is true that this reimbursement program *could* mean that a class action lawsuit is against the interests of the class, the precise relationship between the two

---

[4] Defendants do not argue, and so the court will not consider, whether plaintiffs can satisfy Rule 23(a)(1)-(3).

methods of resolution must be more fully understood before this court is comfortable making that determination, and certainly not before reasonable discovery is accomplished by both sides. For the time being, plaintiffs' allegations are sufficiently well pleaded that the representative parties will fairly and adequately protect the interests of the proposed class. (*See* Am. Compl. (dkt. #29) ¶ 97.)

Defendants' contention regarding Rule 23(b)(3) is similarly unpersuasive. That rule is met if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Defendants' only challenge to plaintiffs' ability to satisfy Rule 23(b)(3) is that the evacuation reimbursement program is a more efficient form of adjudication than a class action lawsuit. (Mot. Strike Br. (dkt. #48) 6.) Notably, however, the program does not qualify as an "adjudication" because it falls outside the court system. *See Aqua Dots*, 654 F.3d at 751-52 ("Rule 23(b)(3) was drafted with the legal understanding of 'adjudication' in mind: the subsection poses the question whether a single suit would handle the dispute better than multiple suits") (citation omitted). Accordingly, the reimbursement program appears irrelevant to the Rule 23(b)(3) analysis, at least on the limited record now before the court.

Since defendants have raised no other arguments regarding Rule 23(b)(3), defendants have not shown that plaintiffs cannot meet the requirements of Rule 23(b)(3).[5]

---

[5] This question, like whether plaintiffs can meet the Rule 23(a) prerequisites, will be explored when the court considers class certification.

### B. CSB Report

Defendants also move to strike paragraphs of the complaint related to the CSB report regarding the events of April 26, 2018. (Mot. Strike (dkt. #47) ¶ 8.) Under 42 U.S.C. § 7412(r)(6)(G) and Federal Rule of Civil Procedure 12(f), defendants argue that paragraphs referencing information compiled by the report must be stricken. (Mot. Strike Br. (dkt. #48) 12.) Superior Refining makes a similar argument in a separate, related action arising from the same underlying events. *See generally Mayr v. Husky Energy, Inc.* (18-cv-917).

Rule 12(f) gives courts discretion to strike from a pleading "any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P. 12(f). However, motions to strike are generally disfavored, especially when seeking to strike portions of pleadings, because they consume scarce judicial resources and are often used for dilatory purposes. *See, e.g., Eagle Cove Camp & Conference Ctr. v. Town of Woodboro*, No. 10-cv-118-wmc, 2011 U.S. Dist. LEXIS 162624, at *18 (W.D. Wis. Mar. 24, 2011). While motions to strike may be granted when they "remove unnecessary clutter from the case [because then] they serve to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989), this is not such a case.

Defendants seeks to strike paragraphs 3.5-3.15 of the complaint, arguing that the paragraphs rely "exclusively" on the CSB report regarding the explosion at the Husky Superior Refinery in violation of 42 U.S.C. § 7412(r)(6)(G). (Mot. Strike (dkt. #28) ¶¶ 1-3, 5.) In response, plaintiffs argue that defendant's motion to strike fails to meet Rule 12(f) standards and that only *specified portions* of CSB documents are prohibited from use

in civil actions.  (Mot. Strike Opp'n (dkt. #32) 3-5.)

Congress has instructed that "[n]o part of the *conclusions, findings, or recommendations* of the [CSB] related to any accidental release or the investigation thereof shall be admitted as evidence or used in any action or suit for damages arising out of any matter mentioned in such report."  42 U.S.C. § 7412(r)(6)(G) (2012) (emphasis added).  Importantly, only the "conclusions, findings, or recommendations" from a CSB report are inadmissible or unusable.  *See Nipponkoa Ins. Co., Ltd. v. NDK Crystal, Inc.*, No. 11 cv 50205, 2014 WL 1117111, at *2 (N.D. Ill. Mar. 19, 2014) (holding that any portion of a CSB report that is not a conclusion, finding, or recommendation resulting from a CSB investigation may be used in civil actions); *see also Allied Terminals v. HMT, Inc.*, 97 Va. Cir. 98, *3 (2017) (unpublished decision) (same).  Thus, plaintiffs may reference any portion of the relevant CSB report that is not a conclusion, finding, or recommendation in his complaint.  Importantly, a number of the challenged allegations do not appear to reference conclusions, findings, or recommendations of the CSB.  (*See* Am. Compl. (dkt. #4) ¶¶ 3.5, 3.7-3.10, 3.13.)  As a result, defendants' motion to strike these paragraphs will be denied.[6]

Plaintiffs raise another persuasive argument: CSB employees *may* testify to their own factual observations in civil actions.  40 C.F.R. § 1611.3(b)-(c).[7]  It would be

_____

[6] While some of the challenged allegations arguably reference conclusions, findings, or recommendations of the CSB (*see* Am. Compl. (dkt. #4) ¶¶ 3.6, 3.11-3.12, 3.14-3.15), as explained below, a motion to strike allegations in the complaint is not the appropriate posture to consider the ultimate admissibility of evidence.  Accordingly, the cases defendant relies on are inapposite.  *See Terry v. BP Amoco Chem. Co.*, 574 F. App'x. 410, 415 (5th Cir. 2014) (holding that CSB Safety Bulletin is inadmissible and cannot be relied upon to survive summary judgment); *Sun Chem. Corp. v. Pike Corp.*, No. 13-4069, 2018 WL 3492143, at *3 (D.N.J. July 20, 2018) (stating that a CSB report cannot be used as evidence).

[7] However, such testimony can only be presented via deposition or written interrogatories because

counterintuitive to allow CSB employees to *testify* as to their observations while simultaneously forbidding the use of those same factual observations from within CSB reports. *See Nipponkoa*, 2014 WL 1117111, at *3 (explaining that "CSB employees may testify in civil actions" but that "their testimony is limited to firsthand factual information, obtained during an investigation, that is not reasonably available elsewhere" (citing 40 C.F.R. §§ 1611.3 & 1611.4)). This further supports a close reading of 42 U.S.C. § 7412(r)(6)(G) so that it only applies to the conclusions, findings, and recommendations of CSB reports.

Moreover, to the extent that defendants are arguing about the admissibility of *evidence*, this simply is not the time. *See Rice v. Reliastar Life Ins. Co.*, No. 11-44-BAJ-M2, 2011 WL 1168520, at *3 (M.D. La. Mar. 29, 2011) ("While the evidence may ultimately be held inadmissible . . . that determination can be more appropriately made through a ruling upon a pre-trial motion in limine, rather than through a motion to strike portions of the pleadings . . . ."); *see also Berry v. Lee*, 428 F. Supp. 2d 546, 564 (N.D. Tex. 2006) (denying Rule 12(f) motion to strike allegations from a complaint that referenced inadmissible statements because admissibility is better addressed at a later stage of litigation). Further, the allegations contained in a complaint, while putting defendant on notice of plaintiff's claim, will also help shape the contours of discovery. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim* or defense and proportional to the needs of the case . . . ." (emphasis added)). Additionally, leaving plaintiff's allegations intact does not prejudice the

---

CSB employees may not testify in court. 40 C.F.R. § 1611.4(a).

defendant. The benefit provided by retaining the allegations combined with their non-prejudicial nature weigh heavily against defendants' motion to strike.

While portions of the CSB report may ultimately be inadmissible, plaintiffs likely can substantiate his allegations without those portions. Plaintiffs could, as mentioned, offer the testimony of a CSB employee about his or her factual observations. *See* 40 C.F.R. § 1611.3(b)-(c). Likewise, plaintiffs could have other witnesses testify about the factual underpinnings of his claim. Regardless, defendants provide no sound reason why plaintiffs should be denied the chance to substantiate their factual allegations through discovery when they may have multiple viable avenues through which to do so.

Finally, plaintiffs' allegations are not rendered "redundant, immaterial, impertinent, or scandalous" within the meaning of Fed. R. Civ. P. 12(f) simply by referencing the CSB report. Defendants' argument for striking the complaint's references to the CSB report as violative of § 7412(r)(6)(G) independent of admissibility concerns is not persuasive. Indeed, if the complaint had contained the same factual allegations without explicitly referencing the CSB's investigation or report, then a motion to strike those allegations would be entirely baseless because none are redundant, immaterial, impertinent, or scandalous. *See* Fed. R. Civ. P. 12(f). Likewise, those references do not warrant granting a motion to strike when denying it would not prejudice the defendants. Accordingly, this motion is denied.

Accordingly, defendants' motion to strike will be denied.

ORDER

IT IS ORDERED that:

1) HEI's motion to dismiss for lack of personal jurisdiction (dkt. #43) is DENIED.

2) Defendants' motion to dismiss for failure to state a claim (dkt. #41) is DENIED.

3) Defendants' motion to strike (dkt. #47) is DENIED.

Entered this 30th day of September, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge