IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JASEN BRUZEK, HOPE KOPLIN, and
CHRISTOPHER PETERSON, individually
and on behalf of all others similarly situated,

                    Plaintiffs,                    OPINION AND ORDER

   v.                                                                18-cv-697-wmc

HUSKY OIL OPERATIONS LTD. and
SUPERIOR REFINING COMPANY LLC,

                    Defendants.

---

      Following a 2018 explosion and fire at defendants' refinery in Superior, Wisconsin, the named plaintiffs and other residents were forced to evacuate their homes and businesses. On behalf of themselves and a class of similarly situated residents who incurred damages as a result of their evacuation, plaintiffs sued Husky Oil Operations Ltd. and Superior Refining Company LLC. In a previous order, the court approved a class settlement in which defendants agreed to pay a total of $1,050,000 into a class fund to be divided as follows: (1) $2,000 each to the class representatives; (2) $169,000 for notice and claims administration; and (3) the remaining $875,000 in payments to class members who submitted a claim. (Dkt. #282). The only issue remaining before the court is plaintiffs' motion for attorneys' fees and costs. (Dkt. #261.)

      The court held an oral argument on plaintiffs' fee request on January 21, 2022. For reasons explained below, the court will grant plaintiffs' motion, but reduce the attorneys' fees requested by 25%, resulting in an award of $2,363,262.94 in fees and award actual costs of $359,948.97, for a total award of $2,723,211.91.

OPINION

Under Rule 23(h) of the Federal Rules of Civil Procedure, a court may award reasonable attorneys' fees in a certified action if authorized by the parties' agreement. Under the parties' settlement agreement here, defendants agreed that class counsel was entitled to reasonable attorneys' fees to be decided by the court, but reserved the right to challenge the amount of fees and expenses requested.

Class counsel has now filed a motion for an award of attorneys' fees based on the lodestar method: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Houston v. C.G. Sec. Servs., Inc.*, 820 F.3d 855, 859 (7th Cir. 2016). Specifically, they submitted billing records showing 6,251 hours of work spent on the case and hourly rates ranging from $350 to $845 for attorneys and $200 to $315 for paralegals (Rudd Decl. (dkt. #263) ¶ 69), for a total of $3,151,017.25 in attorney fees and $359,948.97 in costs.

Although the lodestar method yields a "presumptively reasonable fee," *World Outreach Conf. Ctr. v. City of Chicago*, 896 F.3d 779, 783 (7th Cir. 2018), the district court has discretion to "determine whether an adjustment is warranted under the case-specific circumstances." *Nichols v. Illinois Dep't of Transportation*, 4 F.4th 437, 441 (7th Cir. 2021). As discussed at the settlement approval hearing, the court has two primary concerns with class counsel's fee request. First, $3,151,017.25 in attorney fees is more than three times the total amount that defendants paid to class members. However, the Seventh Circuit has "rejected the notion that the fees must be calculated proportionally to damages." *Sommerfield v. City of Chicago*, 863 F.3d 645, 651 (7th Cir. 2017). On the other hand, that

2

court also recognizes that district courts may, and frequently do, consider proportionality. *Id.*; *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 711 (7th Cir. 2015); *see also Americana Art China Co. v. Foxfire Printing & Packaging*, 743 F.3d 243, 247 (7th Cir. 2014) (recognizing a court's discretion to use either the lodestar method or percentage method in awarding attorneys' fees and costs for a class action); *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014). Indeed, the U.S. Supreme Court has explained that the degree of success is "the most critical factor" in determining the reasonableness of a fee award. *Hensley*, 461 U.S. at 436. Further, the Seventh Circuit has stated that a district court may *presume* that "fees that exceed the recovery to the class are unreasonable," though that presumption is rebuttable, particularly where class counsel achieved an "exceptional settlement." *In re Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, 867 F.3d 791, 793 (7th Cir. 2017).

Thus, in evaluating counsel's fee request, this court begins by considering whether plaintiffs "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. When "a plaintiff has obtained excellent results, [the] attorney should recover a fully compensatory fee," but if "a plaintiff has achieved only partial or limited success, [the lodestar] may be an excessive amount." *Id.* at 435–36. Here, class counsel argues that the court should award their full lodestar fee request because: (1) they bore significant risk in bringing this complex case against sophisticated defendants on behalf of the class; (2) defendants mounted a highly aggressive defense strategy, which plaintiffs successfully defeated; and (3) they negotiated an exceptional, classwide settlement.

3

While class counsel should certainly be awarded for their work in responding to an aggressive defense and in achieving a classwide settlement, the court does not agree that the settlement achieved here qualifies as "exceptional." Generally, a class settlement qualifies as "exceptional" where the class members receive everything they sought in the litigation. *E.g.*, *In re Sw. Airlines Voucher Litig.*, 799 F.3d at 711; *Shoemaker v. Bass & Moglowsky, S.C.*, No. 19-CV-316-WMC, 2020 WL 1671561, at *2 (W.D. Wis. Apr. 3, 2020) (class settlement qualified as an "exceptional settlement" where class members received more than was available under the remedies provision of the applicable statute, and the settlement required defendant to alter its business practice); *Maloy v. Stucky, Lauer & Young, LLP*, No. 1:17-CV-336-TLS, 2018 WL 6600082, at *6 (N.D. Ind. Dec. 14, 2018) (awarding $25,000 in fees plus costs on a total class recovery of $6,000, in part because class counsel "secured the maximum amount in statutory damages available under the FDCPA"); *Vought v. Bank of Am., N.A.*, No. 10-CV-2052, 2013 WL 269139, at *7 (C.D. Ill. Jan. 23, 2013) (awarding $2,000,000 in fees, in part, because the settlement requires defendant to pay "the maximum amount that they could be required to pay under the RESPA statute"). In contrast, the settlement award here was *significantly less* than plaintiffs sought originally. (Complaint (dkt. #1) ¶ 19) (alleging "toxic cloud that could travel 25 miles and put 180,000 people at risk of injury or death").) Even at summary judgment, plaintiffs' damages expert asserted that class members should receive compensation of $456, plus prejudgment interest, with an additional $49 if the class member was the head of household, for a potential total settlement exceeding $9,000,000 for the more than 20,000 class members. (Dkt. #109, at 49.) Nevertheless, less than 30% of the potential

class ultimately submitted claims, and under the settlement, each of those class members received around $167.23, not including offsets for earlier, voluntary reimbursements by defendants. (Dkt. #282, at 3–4.) Despite the hours that class counsel reports putting into this case, after more than three years of litigation, therefore, the court is not persuaded that this figure amounts to an "exceptional settlement" for which a $3,151,017.25 fee is justified.

The court's second concern with counsel's fee request is that class counsel includes compensation for time spent on claims and legal theories that were ultimately unsuccessful. In particular, class counsel's billing records include time spent on: (1) the unsuccessful claim for injunctive relief and certification of an injunctive class; (2) the rejected theory for proving classwide damages based on evacuation costs; (3) an unsuccessful opposition to the dismissal of Husky Energy Inc. as a defendant; and (4) unsuccessful opposition to defendants' *Daubert* motion as to Dr. Baum. Of course, attorneys' fees need not be reduced for time spent on unsuccessful claims if the claims raised were non-frivolous and relevant to the party's legal theory. *See Wink v. Miller Compressing Co.*, 845 F.3d 821, 824 (7th Cir. 2017) ("[I]t was prudent for the lawyers to press [unsuccessful claim] in order to reduce the likelihood of a total defeat. And because the claims were so similar and based largely on the same facts, the marginal cost of presenting the interference claim to the jury was slight."). Still, the hours spent on unsuccessful claims that are distinct from successful claims may be excluded in considering the amount of a reasonable fee. *Hensley*, 461 U.S. at 440; *see also Richardson v. City of Chi.*, 740 F.3d 1099, 1103 (7th Cir. 2014) (district

5

court may reduce attorneys' fee award to reflect the time devoted to "the successful portion of the litigation").

Defendants submitted a chart of plaintiffs' billed work that purports to identify which of plaintiffs' time entries were spent on successful versus unsuccessful claims and theories. (Dkt. #270-6) (identifying 1,590 hours spent on unsuccessful claims, 4,034 likely spent on unsuccessful claims, and 627 hours spent on successful claims). However, this chart suggests a precision that is not only contradicted by the numerous judgment calls hidden behind its numbers, and more importantly, ignores that even if possible, this court is charged with doing "rough justice, not to auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

From the court's own review, plaintiffs appear to have billed at least several hundred hours relating to claims and theories that were unsuccessful, particularly in developing its unsuccessful classwide damages theory and in opposing defendants' successful motion for summary judgment.[1] However, it is not possible to determine precisely how many of plaintiffs' 6,251 hours were allocated to successful versus unsuccessful claims. *Richardson*, 740 F.3d at 1103 ("[W]hen the lawyer's billing records do not permit time to be allocated between winning and losing claims, estimation is inevitable.") And where "a precise estimation is not possible . . . there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ration between winning and losing claims." *Id.* (citing *Hensley*, 461 U.S. at 436-37). In *Richardson*, for example, the Seventh Circuit affirmed the

---

[1] While a significant portion of plaintiffs' costs appear attributable to unsuccessful claims and theories, including to plaintiffs' damages expert, the court is not inclined to second guess, much less reduce, upfront cost outlays by plaintiffs and their counsel.

district court's decision to reduce the lodestar request by roughly 80% in light of the modest success counsel had achieved for the plaintiff, with the jury awarding him only nominal damages of $1 plus $3,000 in punitive damages. *Id.* at 1101, 1103. In two other cases, the Seventh Circuit affirmed reductions to reflect limited success of 50%, *Sommerfield v. City of Chi.*, 863 F.3d 645, 650–52 (7th Cir. 2017), and 70%, *World Outreach Conference Ctr. of City of Chi.*, 896 F.3d 779, 783-84 (7th Cir. 2018). In *World Outreach Conference Center*, the Seventh Circuit again observed that there is "no particular algorithm for making such reductions to the lodestar." 896 F.3d at 783–84.

Finally, as plaintiffs point out, the Seventh Circuit has cautioned that "defendants who drive up the expense of litigation must pay full costs, even if legal fees seem excessive in retrospect." *See Cuff v. Trans State Holdings, Inc.*, 768 F.3d 605, 611 (7th Cir. 2014). Here, the court's *in camera* review of the fees incurred by defendants show total fees of approximately $4 million, roughly $1 million *more* than plaintiffs' counsel is asking be awarded. At minimum, this substantially larger fee paid is certainly consistent with this court's perception of the aggressive litigation tactics by defendants at virtually every turn in this case.

Taking into account the degree of counsel's success in achieving a class settlement, the time spent on unsuccessful claims and theories, and excessive fees driven by defendants' aggressive tactics, therefore, the court concludes that a reduction of 25% in fees is appropriate, for a total of $2,363,262.94 in fees and $359,948.97 in costs.

Defendants argue that the fee award should be reduced further for several reasons, including because: (1) class counsel agreed in its contingency fee contracts to accept only

7

33% of any recovery obtained in litigation; and (2) class counsel's rates are unreasonable. However, for reasons explained more fully at the settlement approval hearing, the court is not persuaded by these additional arguments. (Hrg. Tr. (dkt. #284) 4–5, 11–13.) With respect to the first argument, class counsel's retainer agreements with the individually named plaintiffs contained separate fee clauses for individual and class recovery. (Dkt. #264-1, at 1–2.) In particular, the agreements contemplated that if this case was certified as a class and classwide relief was obtained, the reasonableness of class counsel's fees would be determined by the court. (*Id.*) ("Should your matter be pursued as a class action and should such an action be certified by the Court, the Court will control the award of attorney fees, costs, and expenses if the class is successfully prosecuted and if a benefit to the class is provided by the Attorneys.") Because this case was both certified as a class and resulted in classwide relief, the individual recovery provision is inoperable.

As for the second argument that class counsel's rates are unreasonable, class counsel submitted evidence showing that its published rates range from $350 to $845 for attorneys and $200 to $315 for paralegals (Rudd Decl. (dkt. #263) ¶ 69), as well as evidence that various courts have approved their fee requests based on those rates. (Dkt. #263-1.) Defendants argue that those rates are too high, but their own billing records for this case, which were submitted in camera to the court, reflect similar, if not higher, hourly rates. Accordingly, the court is satisfied that class counsel's rates are reasonable and adequately supported as the market rate.

ORDER

IT IS ORDERED that class counsel's motion for attorneys' fees and expenses (dkt. #261) is GRANTED IN PART and DENIED IN PART, as set forth above. Defendants must pay class counsel $2,363,262.94 in fees and award actual costs of $359,948.97, for a total award of $2,723,211.91.

Entered this 19th of April, 2023.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge